**Bruce K. PRICE, as Administrator of the Estate of A. M. Price, deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 20252.

United States Court of Appeals
Fifth Circuit.
Aug. 18, 1964.

James H. Faulkner, Birmingham, Ala., for appellant.

Giora Ben-Horin, Lee A. Jackson, Robert N. Anderson, J. Edward Shillingburg, Attys., Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

The complaint in this case was filed on March 29, 1957, at the request of the Commissioner of Internal Revenue of the United States, to recover income taxes, penalties, and interest assessed for the years 1944–1947 inclusive against the estate of A. M. Price, deceased.[1] Assessments totaling $148,595.05,[2] which were based upon the alleged fraud of the deceased taxpayer in failing to report income for the above mentioned years, were made by the Commissioner on April 10, 1951. On April 16, 1951, notices and demands for payment of the amounts of these assessments were issued to Mrs. Christine A. Price, then the Administratrix of the Estate of A. M. Price, at Jemison, Alabama. About March 22, 1956, the sum of $11,442.97 was paid to the United States of America, and this amount was credited against the 1944 assessment.

The District Court concluded: "The facts disclosed by the evidence presented at the trial of this case establish an intent to evade taxes and civil fraud as a matter of law on the part of the deceased taxpayer with respect to each of the years 1944, 1945, 1946, and 1947." The Court found for the Government in the amount of $200,355.60, less the 1956 payment of $11,442.97, and entered judgment against the taxpayer in the sum of $188,912.63 together with costs.

The taxpayer contends that the trial court should be reversed for the following reasons: (1) the statute of limitations bars the Government's action; (2) the Government did not give proper notice and demand for payment as specified by § 3655(a) of the Internal Revenue Code of 1939; (3) although the Government stated in its bill of particulars that the "bank deposits" method would be used to prove the decedent's income, the trial court allowed the use of an additional method; (4) the court allowed the Government to remove certain conclusions and recommendations from a special agent's report, which had been used to refresh the memory of a government witness, before requiring it to be produced for examination by taxpayer; (5) the court refused to rule on taxpayer's objection that the testimony of W. C. Barnes was prohibited by the Alabama "Deadman's Statute;"[3] and (6) the

1. The original defendant was the administratrix, Christine (Price) Harris. Later, Bruce K. Price was substituted as administrator and as defendant. The activities of the decedent are primarily involved. The appellant will be referred to as the taxpayer.

2.

| YEAR | TAX | INTEREST | FRAUD PENALTY | TOTAL |
|------|------|----------|---------------|-------|
| 1944 | 9,066.21 | 3,302.58 | 4,533.11 | 16,901.90 |
| 1945 | 13,304.15 | 4,048.11 | 6,652.08 | 24,004.34 |
| 1946 | 35,912.22 | 8,772.42 | 17,956.11 | 62,640.75 |
| 1947 | 26,746.28 | 4,928.64 | 13,373.14 | 45,048.06 |
| | | | TOTAL | 148,595.05 |

3. The pertinent portion of the statute, § 433 of Title 7, Code of Alabama (Recomp.1958) provides:

"In civil suits and proceedings, there must be no exclusion of any witness because he is a party, or interested in the issue tried, except that no person having a pecuniary interest in the result of the suit or proceedings shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or

"bank deposits" and "cash expenditures" methods of establishing the amount of taxable income were used, but there was no reference made to taxpayer's net worth, there was no beginning or ending cash balance proven, and there was no source of income shown. Each of the taxpayer's specifications of error will be considered and numbered separately.

▮ First. The taxpayer filed a motion to dismiss the complaint, which raised the question of the statute of limitations. The Government filed an answer to this motion, asserting that under § 3748(a) of the 1939 Internal Revenue Code the period runs from the date of assessment. The taxpayer contends that the period runs from the date the return is filed. Although it appears that taxpayer's interpretation is correct, we deem it unnecessary to resolve this question. Section 3748 applies only to criminal prosecutions, and this proceeding is a civil action seeking a judgment for a deficiency based on fraudulently withheld income. Section 276(a) [4] of the 1939 Internal Revenue Code contains the applicable statute of limitations.[5] Since fraud has been alleged and proved by the Government in this case, the action is clearly maintainable. Under Section 276

(a), assessment may be made at any time in a case where fraud is proved, and once an assessment has been made the six-year limitation set forth in Section 276 (c) [6] becomes applicable. In the present case, the suit was instituted within six years after the assessment was made.

▮ Second. Section 3655(a) directs the Collector, upon receipt of the assessment lists, to "give notice to each person liable to pay any taxes stated therein, to be left at his dwelling or usual place of business, or to be sent by mail * * *." When the taxpayer died, his personal representative stepped into his shoes. See Miles v. Commissioner, 12 BTA 519 (1928). The required notices and demands were sent to: "Dr. A. M. Price, Decd., c/o Mrs. Christine Price, Admx., Jemison, Alabama," and the record shows that Mrs. Christine Price, the administratrix at that time, personally received them. Therefore, there was sufficient compliance with the requirements of § 3655(a).

▮ Third. In its reply to the motion of the taxpayer for a bill of particulars, the Government stated that the "bank deposits" method of determining income would be used. At the trial, a government agent testified that "the method

proceeding, * * *, unless called to testify thereto by the party to whom such interest is opposed, or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness, or has been taken and is on file in the cause. * * *"

4. § 276
"(a) False return or no return. In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

5. During the trial, the incorrect statute of limitations was cited. The following is from the Government's brief:
"The opposition filed by the Government to the motion to dismiss, while asserting that 'the action was timely brought within six years after the date of the assessments' did, through inadvertence, refer to Section 3748(a) (2) of the Internal Revenue Code of

1939, Appendix, infra, the six-year statute of limitations for criminal proceedings. (R. 7.) However, since this period is the same as that provided by Section 276(c), the error did not prejudice substantial rights of the administratrix. Rule 61, Federal Rules of Civil Procedure."

6. § 276
"(c) Collection after assessment. Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

employed is the bank deposits, and currency method." The taxpayer argues that this constitutes a fatal variance between pleadings and proof. The Government replies that it is the usual procedure for it to show expenditures made in cash as well as those made by check, since many taxpayers do not deposit all cash receipts. Hence, it may be that the two methods are so closely related and are used in conjunction so frequently, that as a practical matter they constitute a single method. See Percifield v. United States, (9 Cir. 1957) 241 F.2d 225, 229, n. 7. Without getting into the effect of the 1946 amendment to Rule 12(e) of the Fed.R.Civ.P., which abolished bills of particulars, we answer the taxpayer's contention by referring to 28 U.S.C.A. § 2111, which provides:

> "On the hearing of any appeal * * the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

See also Rule 61 of the Fed.R.Civ.P. The taxpayer has neither shown injury nor claimed prejudice as a result of the alleged discrepancy, if, indeed, there was a discrepancy.

■■ Fourth. Taxpayer asserts that the court erred in not requiring that the complete special agent's report be given to him for cross-examination, and cites Montgomery v. United States, (5 Cir. 1953) 203 F.2d 887, as authority. In the Montgomery case, the court stated:

> "Of course, a conviction will not be reversed for denial of the right to examine such notes and memoranda if the error does not affect substantial rights of the party. Rule 52, Federal Rules of Criminal Procedure, 18 U.S.C.A.; United States v. Socony Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129."

In the present case, the court merely allowed the Government to remove the sections of the report containing the special

agent's conclusions and recommendations. There is no allegation that the agent testified on direct examination to any matter contained in the extracted portions of the report. Counsel for the taxpayer was afforded an opportunity to examine the entire report except for the conclusions and recommendations, and the agent testified that he had not referred to either of these sections for the purpose of refreshing his recollection. The taxpayer has not shown or even alleged any prejudice as a result of the removal of these sections from the report before he was allowed to examine it. Since the report is not part of the record in this case and its contents are not known to this court, a specific showing of prejudice is necessary to upset the ruling of the trial judge. See Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 651 (1943).

■ Fifth. W. C. Barnes, a nephew of the decedent, testified for the Government that decedent, during the period under consideration, had told him that he had around $250,000.00 in a chest. The taxpayer objected on the ground that the Alabama "Deadman's Statute," supra,[7] prohibits this testimony. The court allowed the testimony and stated that he would rule on the objection later. The court failed to do so, and the taxpayer now contends that such failure constitutes error. We think this evidence was properly admitted in the trial court. Rule 43(a) of the Fed.R.Civ.P. paves the way for the liberal admission of evidence in the federal courts. That rule provides:

> "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the stat-

7. See footnote 3.

ute or rule which favors the reception of evidence governs * * *."

Cases in this Circuit have pointed out that Rule 43(a) defines certain standards for the admissibility of evidence in the federal court, but it does not enumerate the exclusive standards of admissibility. Hence, relevant evidence may be admitted which, in the judgment of the trial court, is trustworthy. See Dallas County v. Commercial Union Ins. Co., (5 Cir. 1961) 286 F.2d 388; Monarch Ins. Co. v. Spach, (5 Cir. 1960) 281 F.2d 401. Since jurisdiction in this case is not based on diversity of citizenship, the considerations raised in Erie RR v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, which might otherwise compel the application of a state rule of evidence in some circumstances, are inapplicable. We cannot say the trial judge has abused his discretion in admitting Barnes' testimony here.

 In addition, the Alabama statute is applicable only to cases in which the witness has a pecuniary interest contrary to that of the party against whom he testifies. The taxpayer has shown no such interest in the witness Barnes. There is a reference in taxpayer's brief to § 3792 of the Internal Revenue Code of 1939, which we take to be a suggestion that the witness is a paid informer. However, there was no proof, or attempted proof of this fact at the trial. The record does not indicate anywhere that the witness had an interest contrary to that of the estate, and the statute is therefore inapplicable.

 Sixth. Taxpayer argues that the "bank deposit" and "cash expenditure" methods of computing income tax were inproperly used, because there was never any proof of decedent's net worth, or of decedent's worth at the beginning or ending of the period under consideration. However, when bank deposits and cash expenditures are utilized to compute a taxpayer's income, we fail to see how "net worth" is relevant. The "net worth" method of determining taxable income requires the determination of the taxpayer's net assets at the beginning and end of the tax period. Any increase in the taxpayer's net assets is assumed to have derived from taxable sources. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1955). On the other hand, the "bank deposits" method assumes only that all money deposited in a taxpayer's bank account during a given period constitutes taxable income. Similarly, the "cash expenditures" method assumes that cash expended by the taxpayer, which was not disbursed from his bank account, came into the taxpayer's possession as taxable income. It is the burden of the taxpayer to demonstrate a non-taxable source for this cash.

 As can be seen readily, neither the "bank deposits" nor the "cash expenditures" method necessitates a determination of the total net worth of the taxpayer at any time. Of course, a beginning bank balance must be established and deducted for the first year if the "bank deposits" method is employed, and the Government must take into account any non-taxable source or deductible expense of which it has knowledge. Indeed, the trial court found that at the beginning of the period decedent had $5,283.00 cash on hand, and ruled that this amount should be deducted from the cash expenditures for 1944. Also, the trial judge subtracted all loans and other non-taxable items which were shown to have been involved during the years in question.[8] If taxpayer felt that the Government's method of computation was unfair or inaccurate, the burden was on him to show such unfairness or inaccuracy. Since this is a civil action by the Government to recover a deficiency, the cases involving criminal prosecutions for tax evasion are not apposite because of the greater burden of proof imposed upon the Government in that class of cases. Section 41 of the Internal Revenue Code of 1939 provides:

"* * * if the method employed [by the taxpayer] does not clearly

---

8. In its computations the trial court allowed deductions for loans, depreciation, and cash on hand on December 31, 1943.

reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * * "

The rule is well established in civil cases that the computation made by the Commissioner shall be presumed correct. The taxpayer has the burden of rebutting this presumption by making some showing that the Commissioner's method has not accurately reflected his income. See, e. g., Goldberg v. C. I. R., (5 Cir. 1956) 239 F.2d 316; Anderson v. C. I. R., (5 Cir. 1957) 250 F.2d 242, cert. den., 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844. The taxpayer has not sustained this burden, and he has not shown us that the trial court was clearly erroneous in accepting and modifying the Commissioner's computations. We also hold that there was substantial independent evidence to support the trial court's finding on the issue of fraud.

The judgment is affirmed.