T.C. Summary Opinion 2001-68


UNITED STATES TAX COURT


GEORGE STEVE SASSER AND TAMMY R. SASSER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3318-99S.                    Filed May 10, 2001.


George Steve Sasser and Tammy R. Sasser, pro sese.

<u>Ross M. Greenberg</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  All subsequent section references are to the Internal Revenue Code in effect for 1996, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1996 Federal income tax in the amount of $2,144.

The issue for decision is whether petitioner George Steven Sasser received unreported income in his business as a self-employed carpet installer. We hold that he did to the extent set forth below.

Background

Some of the facts have been stipulated, and they are so found. Petitioners resided in DeFuniak Springs, Florida, at the time that their petition was filed with the Court.

Petitioners are a married couple. Throughout the year in issue, petitioner wife (Mrs. Sasser) was a licensed practical nurse and petitioner husband (Mr. Sasser) was a self-employed carpet installer. Mrs. Sasser maintained the family accounts and assisted Mr. Sasser in keeping records related to the income and expenses of his business.

Mr. Sasser installed carpets for Evans Carpet City (Evans City) of DeFuniak Springs, Florida, and he may also have installed carpets for one or more homebuilders. Evans City sold both residential and commercial carpeting and utilized the services of several different installers to lay carpet that it sold.

Evans City and Mr. Sasser followed an established business practice whereby Evans City would contact Mr. Sasser when an

installation job was available. Depending on the degree of difficulty in completing a particular carpet installation, Mr. Sasser had the discretion to either work alone or associate himself with another carpet installer or other assistant.

From time to time, Mr. Sasser associated himself with another carpet installer, Lester Roach (Mr. Roach), whose services were also utilized by Evans City. For jobs where Mr. Sasser was contacted first by Evans City, he might contact Mr. Roach if he needed assistance with an installation. Similarly, for jobs where Mr. Roach was contacted first by Evans City, he might contact Mr. Sasser if he needed assistance with an installation.

If Mr. Sasser was contacted first by Evans City to perform an installation, Evans City would pay for the labor involved by issuing a check payable solely to Mr. Sasser, who would in turn pay Mr. Roach for his services. Similarly, if Mr. Roach was contacted first by Evans City to perform an installation, Evans City would pay for the labor involved by issuing a check payable solely to Mr. Roach, who would in turn pay Mr. Sasser for his services.

Mr. Sasser regarded his arrangement with Mr. Roach as an even exchange whereby "usually, we kind of trade it off. I'd help him out on jobs. He would help me out on jobs". As a result, Mr. Sasser did not keep track of the number of times that

he and Mr. Roach worked together, but he estimated that they jointly performed about 10 installations.

Petitioners maintained two checking accounts with Regions Bank throughout 1996. Although one account was denominated a "personal" account and the other a "business" account, petitioners commingled income from Mr. Sasser's business between the two accounts, and they utilized the personal account for most of their financial transactions. In 1996, petitioners made total deposits of $29,096 to the personal account and total deposits of $1,518 to the business account.

In 1996, Mrs. Sasser received wages net of withheld taxes in the amount of $17,267.

In 1996, petitioners received a refund of Federal income tax for the taxable year 1995 in the amount of $1,730. The refund was not deposited in either of petitioners' checking accounts.

In December 1996, petitioners obtained a cash advance from a credit card company in the amount of $1,500.

During 1996, Mrs. Sasser deposited amounts received from her brother in petitioners' personal checking account. Mrs. Sasser's brother, who lived next door to petitioners, was a construction worker who did not have a checking account, and he was not financially responsible. Mrs. Sasser then paid certain of her brother's bills by issuing checks drawn on petitioner's personal checking account. Mrs. Sasser received approximately $300 per

month from her brother in 1996 for this purpose.

Petitioners timely filed a Federal income tax return, Form 1040, for 1996. Petitioners attached to their return Schedule C, Profit or Loss From Business, relating to Mr. Sasser's business.

On his Schedule C, Mr. Sasser reported gross receipts in the total amount of $5,635. This amount corresponds with the amount of nonemployee compensation reported on a Form 1099-MISC that Evans City issued to Mr. Sasser. Insofar as his arrangement with Mr. Roach was concerned, Mr. Sasser did not claim any reduction in gross receipts for cost of labor, nor did he claim any deduction for subcontract labor.

In the notice of deficiency, respondent determined that petitioners failed to report $8,352 of nonemployee compensation. Respondent's determination is based on a Form 1099-MISC filed by Mr. Roach claiming that he paid $8,352 to Mr. Sasser in 1996. Respondent sought to confirm this specific item adjustment by a bank deposits analysis that demonstrated, in respondent's view, that Mr. Sasser had between $6,730 and $11,829 of unreported income in 1996.

Discussion

At trial, respondent called Mr. Roach as a witness and introduced Mr. Roach's "daily planner" as an exhibit. In respondent's view, Mr. Roach's testimony and records corroborate the Form 1099-MISC showing the payment of $8,352 of nonemployee

compensation to Mr. Sasser.  Cf. <u>Portillo v. Commissioner</u>, 932 F.2d 1128 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68.   We disagree.

We did not find Mr. Roach to be a credible witness.  See <u>Diaz v. Commissioner</u>, 58 T.C. 560, 564 (1972); <u>Kropp v. Commissioner</u>, T.C. Memo. 2000-148.  Moreover, his records were not contemporaneous and were patently unreliable.  Indeed, in responding to a question raised at trial by the Court regarding the methodology employed in keeping his records, Mr. Roach testified: "I don't know how all them numbers come up out there." Later Mr. Roach apologized for the state of his records, saying: "And I'm sorry if it ain't computer-digited and all that." Finally, apart from our evaluation of his demeanor at trial, we note that Mr. Roach had a financial interest in the Form 1099-MISC that made him less than a disinterested witness.

Respondent also relies on a bank deposits analysis to support his deficiency determination.  See <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).  Under one variation of the analysis, respondent contends that Mr. Sasser had $11,829 of unreported income in 1996:

| | |
|---|---|
| Deposits to personal account | $29,096 |
| Less: Mrs. Sasser's net wages | -17,267 |
| Unreported income | 11,829 |

Under the other variation of the analysis, respondent contends that Mr. Sasser had at least $6,730 of unreported income in 1996:

| | |
|---|---:|
| Deposits to personal account | $29,096 |
| Less: Mrs. Sasser's net wages | -17,267 |
| Balance | 11,829 |
| Less: Dec.'96 credit card advance | -[1]1,500 |
| Balance | 10,329 |
| Less: Deposits attributable to Mrs. Sasser's brother | -[1]3,600 |
| Unreported gross receipts | 6,729 |

[1]If proven

Neither variation of respondent's bank deposits analysis takes into account the $1,730 tax refund that petitioners received in 1996. This "omission" is appropriate because the refund was not deposited in either of petitioners' checking accounts and therefore need not be accounted for insofar as the bank deposits analysis is concerned.

The gross receipts reported by Mr. Sasser on his Schedule C were also not taken into account by either variation of respondent's bank deposits analysis. In this regard, respondent's position seems to be that there was no commingling of Mr. Sasser's gross receipts between petitioner's personal and business checking accounts. However, this position is contrary to the weight of the evidence, and our findings reflect the fact that Mr. Sasser's gross receipts were commingled between petitioners' two accounts.

Conclusion

Based on our findings of facts and conclusions of law, we hold that Mr. Sasser received unreported income in 1996 in the amount of $2,612, determined as follows:

```
Deposits to personal account          $29,096
Plus: Deposits to business account      +1,518
Total deposits                         30,614
Less: Mrs. Sasser's net wages         -17,267
Balance                                13,347
Less: Reported gross receipts          -5,635
Balance                                 7,712
Less: Dec.'96 credit card advance      - 1,500
Balance                                 6,212
Less: Deposits attributable to
      Mrs. Sasser's brother            -3,600
Unreported gross receipts               2,612
```

Reviewed and adopted as the report of the Small Tax Case Division.

In order to give effect to the foregoing,

Decision will be entered

under Rule 155.