T.C. Summary Opinion 2012-104

UNITED STATES TAX COURT

RUTH REAL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30651-08S.                            Filed October 25, 2012.

Ruth Real, pro se.

<u>Derek P. Richman</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable

_____

[1]Unless otherwise indicated, subsequent section references are to the Internal
(continued...)

by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated September 22, 2008 (notice), respondent determined the following deficiencies in, addition to tax, and penalties with respect to petitioner's Federal income tax:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|-------------------------------|----------------------|
| 2003 | $7,894 | --- | $1,579 |
| 2004 | 4,820 | $1,344 | 438 |

After concessions,[2] the issues for decision are as follows: (1) whether certain deposits made into petitioner's bank accounts represent income that she failed to report on her Federal income tax returns for the years in issue; (2) whether petitioner's pro rata share of income from an S corporation should be increased by $10,891 and $10,940 for 2003 and 2004, respectively, as a result of disallowed deductions claimed by the S corporation; (3) whether for 2004 petitioner is liable for a section 6651(a)(1) addition to tax; and (4) whether

---

[1](...continued)
Revenue Code of 1986, as amended, in effect for the relevant period. Rule references are to the Tax Court Rules of Practice and Procedure.

[2]For both years in issue petitioner concedes that her correct filing status is married filing separately and that she is not entitled to an earned income credit.

petitioner is liable for a section 6662(a) accuracy-related penalty for either year in issue.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Florida.

At all times relevant to this proceeding petitioner provided services to Nations Business Center, Inc. (Nations), both as an employee and as an independent contractor; the distinction between the two employment relationships that petitioner shared with Nations is less than clear. She prepared tax returns and represented Nations' clients in tax audits in both capacities and routinely drove to meet with Nations' clients in order to do so. Petitioner's compensation from Nations included an allowance for automobile expenses.

At the same time petitioner was providing services to Nations, she was performing similar services to her own clients through Ruth Real & Associates, Inc. (RRAA), an S corporation organized years earlier and owned entirely by petitioner at all times relevant here. By order dated December 30, 2008, issued by the U.S. District Court for the Southern District of Florida, Nations, RRAA, and petitioner were permanently enjoined from violating various provisions of the

Internal Revenue Code relating to the tax return preparation services each was offering to clients.

Neither petitioner nor anyone else maintained formal accounting records for RRAA that show RRAA's income or expenses for either year in issue. For each year in issue RRAA filed a Form 1120S, U.S. Income Tax Return for an S Corporation (S corporation return) that petitioner had prepared. The 2003 S corporation return shows a $2,046 loss; the 2004 S corporation return shows net income of $12,292. The amount of the 2003 loss and the amount of the 2004 net income take into account the following:

| Expense | 2003 | 2004 |
| --- | --- | --- |
| Interest deduction | $3,658 | --- |
| Vehicle deduction | 5,427 | $7,441 |
| Vehicle insurance deduction | 1,806 | 3,499 |

The deductions listed above are attributable to an automobile petitioner owned. As best we can determine from the record, the amount shown as an "interest deduction" relates to interest paid on the loan petitioner incurred to purchase the automobile. For each year in issue, the amount shown as "vehicle deduction" is the amount of principal that petitioner paid on the loan (we suspect that for 2004 the amount includes both principal and interest), and the amount shown for insurance relates to the amount petitioner paid to insure the car.

The S corporation returns each include a Schedule L, Balance Sheets Per Books. On the Schedule L included with RRAA's 2004 return the line designated "Loans from shareholders" shows $3,289 as the "Beginning Balance" and $1,051 as the "Ending Balance".

During the years in issue petitioner maintained the following bank accounts (bank accounts):

| Year | Bank | Account No. Ending |
|------|------|--------------------|
| 2003 | Washington Mutual Bank | 9480 |
| 2003-04 | Washington Mutual Bank | 7465 |
| 2003-04 | SunTrust Bank | 0255 |

Deposits made into the bank accounts during 2003 totaled $48,589.50; deposits made into the bank accounts during 2004 totaled $36,975.82.

Petitioner prepared her 2003 and 2004 Federal income tax returns. Both returns include a Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., issued by RRAA. For 2003 the Schedule K-1 shows $2,046 as petitioner's pro rata share of RRAA's net operating loss, and that amount is taken into account in the computation of the adjusted gross income shown on petitioner's 2003 return. For 2004 the Schedule K-1 shows $12,292 as petitioner's pro rata share of RRAA's net income, and that amount is taken into account in the computation of the adjusted gross income shown on petitioner's 2004 return.

Some of the adjustments made in the notice have been agreed to between the parties or conceded by one or the other of them, and other adjustments are computational. Those adjustments will not be discussed. The deficiency for each year results from adjustments/increases to petitioner's taxable income: (1) pursuant to the bank deposits indirect method of income determination; and (2) an increase to petitioner's pro rata share of income from RRAA because of respondent's disallowances of the above-listed deductions claimed on the S corporation returns.

Discussion

## I. Omitted Income Adjustments--Bank Deposits

Section 6001 requires a taxpayer to maintain sufficient records to allow the determination of the taxpayer's correct tax liability. Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989). Petitioner failed to do so for both years in issue.

When a taxpayer fails to keep adequate books and records, the Commissioner is authorized to determine the existence and amount of the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 687, 693. The Commissioner's reconstruction of a taxpayer's income need only be reasonable in the light of all

surrounding facts and circumstances.  Petzoldt v. Commissioner, 92 T.C. at 687

(citing Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970), and Schroeder v.

Commissioner, 40 T.C. 30, 33 (1963)).

The bank deposits method, one of several indirect methods of reconstructing

a taxpayer's income commonly used by the Commissioner, "has long been

sanctioned by the courts."  Estate of Mason v. Commissioner, 64 T.C. 651, 656

(1975), aff'd, 566 F.2d 2 (6th Cir. 1977).  Bank deposits constitute prima facie

evidence of income.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see also

Clayton v. Commissioner, 102 T.C. 632, 645 (1994).  The bank deposits method

assumes that all of the deposits into a taxpayer's account are taxable income unless

the taxpayer can show that the deposits are not taxable.  See Clayton v.

Commissioner, 102 T.C. at 645; see also Price v. United States, 335 F.2d 671, 677

(5th Cir. 1964).  The Commissioner need not show a likely source of the income

when using the bank deposits method, but the Commissioner must take into account

any nontaxable items or deductible expenses of which the Commissioner has

knowledge.  See Price, 335 F.2d at 677; Clayton v. Commissioner, 102 T.C. at 645-

646.  Respondent now concedes that deposits totaling $3,309.41 for 2003 and

$10,131.51 for 2004 are from nontaxable sources.

Because petitioner and RRAA failed to keep adequate books and records during the years in issue, we find that respondent's reliance upon the bank deposits method to determine her income for each year was reasonable. Furthermore, petitioner does not so much dispute respondent's reliance upon the bank deposits method to determine her income for each year in issue as the alleged failure of respondent's analysis to take into account certain deposits from nontaxable sources. Calling our attention to specific deposits, she claims that each deposit represents either: (1) a reimbursement for car payments and other expenses she paid on behalf of her stepson; (2) a reimbursement from her husband for family expenses she paid; (3) a gift; (4) a loan repayment from RRAA; (5) an employee business expense reimbursement from Nations; or (6) a small deposit from other sources.

As more fully explained below, we agree with respect to certain deposits and disagree with respect to others.

A. <u>Reimbursements From Petitioner's Stepson</u>

Petitioner claims that during the two years at issue deposits that total $8,470--$7,690 in cash and the balance by check--are attributable to amounts paid to her by her stepson. According to petitioner, she "financed" the purchase of a 2002 Ford Mustang titled in her name but used by him. According to petitioner,

she made the monthly car payments and paid his car insurance and cell phone expenses; he then reimbursed her each month, or so, for those amounts. In support of her claim that the deposited amounts were loan repayments and not income, petitioner submitted to the Court: (1) a letter from her stepson stating that petitioner paid $630 a month or more towards car, insurance, and cell phone expenses on his behalf; (2) a ledger titled "Ruth Paid on Behalf of * * * [her stepson] Monthly"; (3) invoices from Southern Star Insurance Agency, Inc.; (4) an installment agreement for the purchase of a 2002 Ford Mustang; (5) an account transcript from Ford Credit showing monthly payments of $489.83 petitioner made; and (6) canceled checks showing monthly payments petitioner made to Ford Credit and Southern Star Insurance Agency, Inc.

Petitioner contends that most of the reimbursements she received from her stepson were made in cash because her stepson "didn't trust banks". Dealing in cash, of course, only increases the need for adequate recordkeeping, and petitioner's casual recordkeeping practices provide only some support for her claim. A review of the bank account statements shows irregular amounts and/or intervals with respect to certain of the deposits that petitioner claims are reimbursements from her stepson. On the other hand, the pattern of some deposits supports her claim. Taking those deposits into account, we find that deposits of

$5,480 in 2003 and $2,040 in 2004 are from nontaxable sources as claimed by petitioner, and those amounts should be added to the amounts respondent conceded as deposits from nontaxable sources for each year in issue.

### B. Reimbursements From Petitioner's Husband

Petitioner claims that certain deposits that total $6,664.36 for 2003 and 2004 are from her husband. According to petitioner, she paid various family living expenses and her husband reimbursed her, either by check or in cash, for his share of those expenses. According to petitioner, she deposited these reimbursements in one or the other of her bank accounts.

The record shows that checks totaling $1,986.67 ($1,752 for 2003 and $234.67 for 2004) from petitioner's husband were deposited into one or the other of petitioner's bank accounts. We accept her explanation with respect to deposits evidenced by a check from her husband; we reject her explanation with respect to cash deposits claimed to be from the same source. Accordingly, $1,752 for 2003 and $234.67 for 2004 should be added to the amounts respondent conceded as deposits from nontaxable sources for each of those years.

### C. Gifts

Petitioner claims that some of the deposits in dispute, that is, a total of $270 for 2003 and 2004, are not from taxable sources. According to petitioner, these

deposits represent nontaxable gifts to petitioner. In support of her claim, petitioner submitted illegible copies of deposit items. Try as we might, we are unable to decipher the information on the illegible copies. Consequently, we find no support for petitioner's claim that deposits totaling $270 are from nontaxable sources, and petitioner's claim in that regard is rejected.

D.  Loan Repayments From RRAA

Petitioner claims that deposits that total $2,734.75 ($1,734.75 for 2003 and $1,000 for 2004) represent repayments of principal for loans that she made to RRAA.

The Schedule L attached to RRAA's 2004 return, as well as copies of checks in the record, support her claim for that year. Consequently, for 2004 $1,000 should be added to the amount of deposits respondent concedes are from nontaxable sources. The record does not otherwise support petitioner's claim for 2003.

E.  Reimbursements From Nations

Petitioner claims that deposits that total $370.07 for 2003 and 2004 are employee business expense reimbursements from Nations. The only evidence in the record to support her claim in this regard is her testimony, which under the circumstances we are hardly bound to accept. See Tokarski v. Commissioner, 87

T.C. at 77. Accordingly, petitioner's claim that certain of the deposits represent nontaxable employee business expense reimbursements is rejected.

   F. Deposits From Other Sources

Petitioner offers a variety of nontaxable sources for other deposits. None of petitioner's claims are supported by other evidence, and none are persuasive.

II. Pro Rata Share of Income From RRAA

Petitioner's pro rata share of income from RRAA increased as a result of the disallowance of deductions claimed on RRAA's returns for the years in issue. The disallowed deductions are attributable to an automobile owned not by RRAA, but by petitioner. RRAA is obviously not entitled to claim a deduction for expenses, if otherwise paid or incurred and otherwise deductible, that were paid or incurred by its shareholder. See Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943) (a corporation is a separate entity from its shareholders for tax purposes). Furthermore, there has been no showing that either the S corporation or petitioner has satisfied the section 274 substantiation requirements with respect to deductions for these expenses. See secs. 274(d)(4), 280F(d)(4)(A). Respondent's adjustments increasing petitioner's pro rata share of RRAA income are sustained.

III. Section 6662(a) Penalties and Section 6651(a)(1) Addition to Tax

Although petitioner has not expressly conceded the section 6651(a) addition to tax and the section 6662(a) penalties, she admitted at trial that any underpayment of tax required to be shown on her return for each year in issue is due to her negligence, and she further agrees that her 2004 return was filed late.[3] Furthermore, petitioner did not argue that she acted with reasonable cause and in good faith with respect to the underpayment of tax required to be shown on her return for each year, nor did she argue that her failure to timely file her 2004 return was due to reasonable cause and not willful neglect. See Rule 142(a)(1); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Under the circumstances, we proceed as though petitioner has conceded these items, and further discussion of the addition to tax and penalties would serve no meaningful purpose. Petitioner is liable for a section 6662(a) penalty for each year, and she is liable for a section 6651(a)(1) addition to tax for 2004.

---

[3]The parties stipulated that petitioner's 2004 Federal income tax return was due on April 15, 2005, and filed on August 14, 2006. The notice states that her 2004 return was due on October 15, 2005, and filed on May 22, 2006. We leave it to the parties to determine whether their stipulation or the notice accurately describes the filing history of petitioner's 2004 return.

To reflect the foregoing,

Decision will be entered

under Rule 155.