T.C. Memo. 2009-147

UNITED STATES TAX COURT

LEE MICHAEL LAWSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24205-07.                    Filed June 23, 2009.

Lee Michael Lawson, pro se.

Randall G. Durfee and Michael W. Bentley, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notice of deficiency dated September 13, 2007 (the notice), respondent determined deficiencies in, and additions to, petitioner's Federal income tax as follows:

|      |            | Additions to Tax   |                 |           |
| Year | Deficiency | Sec. 6651(a)(1)    | Sec. 6651(a)(2) | Sec. 6654 |
|------|------------|--------------------|-----------------|-----------|
| 2002 | $20,212    | $5,054             | To be computed  | --        |
| 2003 | 26,467     | 5,762              | To be computed  | $668      |
| 2004 | 60,088     | 13,520             | To be computed  | 1,745     |
| 2005 | 53,671     | 12,076             | To be computed  | 2,153     |

Unless otherwise noted, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

The principal issues for decision are whether petitioner had income from various sources during the years in issue and whether he is liable for the section 6651(a)(1) additions to tax for failing to file returns for the years in issue. Respondent has conceded the section 6651(a)(2) and 6654 additions to tax. Petitioner bears the burden of proof. See Rule 142(a).[1] We must decide as a preliminary matter whether one of respondent's exhibits is admissible into evidence.

---

[1] Petitioner does not argue (nor could we find) that the burden of proof shifts to respondent under either sec. 6201(d) or sec. 7491(a). Both sections require as a prerequisite to shifting the burden of proof a showing the taxpayer provided records requested by the Commissioner and cooperated with his examination. We have found infra that petitioner failed to provide records or cooperate.

Exhibit 24-R (Ex. 24-R) purports to be the transcript of a deposition of petitioner in an Alaska State court action captioned Lee Lawson v. Thomas K. Pope, et al., Case No. 1SI-04-145CI (Alaska Super. Ct. closed Oct. 27, 2005) (Lawson v. Pope). Petitioner testified that he was the plaintiff in a suit by that name and that he gave several depositions in that case. Nonetheless, in this case, when presented at trial with Ex. 24-R, petitioner testified that he could not identify that transcript. Respondent identified Ex. 24-R as a transcript of petitioner's deposition testimony in Lawson v. Pope through the testimony of his witness, Revenue Agent Alex Medley, who conducted respondent's investigation of petitioner's Federal income tax liabilities for the years in issue. Revenue Agent Medley testified that he received Ex. 24-R from Bruce Weyhrauch, the attorney who represented the defendant in Lawson v. Pope and who conducted the deposition. Respondent argues that Ex. 24-R is relevant because petitioner's testimony in the transcript contradicts his testimony here that, during 2004 and 2005, he did not own income-producing assets that are central to this case. Respondent argues that petitioner's testimony in the transcript is not hearsay because it is either a prior statement by a witness, see Fed. R. Evid. 801(d)(1), or an admission by a party-opponent, see Fed. R. Evid. 801(d)(2). Finally, respondent argues that Revenue Agent Medley's testimony is sufficient to

meet the requirement of authentication or identification set forth in rule 901 of the Federal Rules of Evidence.  In particular, respondent relies on the illustration in subdivision (b)(4) of that rule, "Distinctive characteristics and the like", which lists factors that may satisfy the requirement of sufficient authentication or identification:  "Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."

Petitioner's deposition testimony in Ex. 24-R is relevant, nonhearsay testimony.  In form and content it is a deposition of petitioner in Lawson v. Pope.  Respondent's witness, Revenue Agent Medley, received it from Mr. Weyhrauch, the attorney who deposed petitioner in Lawson v. Pope.  Petitioner admits that he was deposed in that proceeding, and he did have an opportunity while on the stand in this trial to review the transcript.  He did not deny that it was a transcript of his deposition testimony; he simply said he did not know.

Rule 901(a) of the Federal Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Rule 901 of the Federal Rules of Evidence does not erect a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence.  The proponent

is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004). We are satisfied that Ex. 24-R is what it purports to be; viz, a transcript of a deposition of petitioner in Lawson v. Pope. Ex. 24-R is received into evidence.

FINDINGS OF FACT

At the time he filed the petition, petitioner resided in Alaska.

Petitioner did not file a Federal income tax return for any year in issue. He did not provide Revenue Agent Medley with any records and did not cooperate with him during his investigation of petitioner's 2002 through 2005 Federal income tax liabilities. Revenue Agent Medley prepared substitutes for returns for petitioner for each of those years, reconstituting his income from various sources and by various methods available to respondent.

During 2002 and 2003 petitioner worked for William G. Shattenberg (Mr. Shattenberg).

During 2004 and 2005, under the name "Lawson & Associates", petitioner owned and operated a grocery store and electrical generating business in and around Port Alexander, Alaska. During those years, Lawson & Associates was a sole proprietorship, and petitioner was the sole proprietor. Petitioner acquired the

store and electrical generating facilities on February 27, 2004, from Nelson L. Jodway.  Petitioner (under the name "Lawson and Associates") also acquired from Mr. Jodway real property subject to a lease to the U.S. Coast Guard for use as a communications site.  The U.S. Coast Guard paid Lawson & Associates $12,670 and $13,115 in rent during 2004 and 2005, respectively.  AT&T Alascom paid Lawson & Associates $36,775 and $44,130 for electricity during 2004 and 2005, respectively.

During 2002, 2003, 2004, and 2005 petitioner had signature authority over and maintained a personal checking account No. xxx-xxx7482 in his name at Wells Fargo Bank, N.A. (acct. No. 7482).  Deposits of $33,653, $53,483, and $27,745 were made into that account during 2002, 2003, and 2004, respectively.  Those deposits included deposits of $1,372 and $3,533, accompanied by the annotation "State Of Ak Dol Credits", during 2003 and 2004, respectively.

During 2003, 2004, and 2005, petitioner had signature authority over and maintained a checking account No. xxx-xxx4553 in the name of Lee Lawson d/b/a Lawson & Associates at Wells Fargo Bank, N.A. (acct. No. 4553).  Deposits of $3,362, $86,248, and $99,436 were made into that account during 2003, 2004, and 2005, respectively.

Petitioner was entitled to Permanent Fund Dividends from the State of Alaska but did not receive them because they were garnished to pay child support or to pay tax debts.

OPINION

I. Introduction

Petitioner assigns error to the notice, averring in support of his assignment: "The taxes they say I owe have already been paid by another man." As petitioner makes clear on brief, his position (which we reject) is that another individual, Tommy Wells, was the owner of Lawson & Associates during 2004 and 2005 and properly taxable with respect to its income. Petitioner avers no other facts in the petition, but, at trial and on brief, he made clear other challenges to the notice. We shall address what we believe to be his challenges.

II. Deficiencies in Tax

A. 2002

In support of the notice, respondent shows an adjustment of $50,901 for "Gross Sales". The explanation accompanying that adjustment (and adjustments of $72,752, $118,735, and $111,994 similarly labeled for 2003, 2004, and 2005, respectively) states: "In the absence of adequate records, your taxable income * * * [has] been computed by reference to bank deposits and cash payments * * *. Thus, it is determined you had gross business income in the * * * [amount] shown above." One of respondent's

exhibits, Ex. 45-R, shows that, during 2002, there were three bank accounts at Wells Fargo Bank, N.A., including acct. No. 7482, to which $33,653 was deposited, as found supra, and two other accounts, accounts Nos. xxx-xxx6994 and xxx-xxx4815 (acct. Nos. 6994 and 4815, respectively), to which respondent concedes on brief no deposits were made that are includable in petitioner's gross income.[2]  Respondent's application of the bank deposits method accounts for only $33,653 of the total of $50,901 that respondent originally determined to be unreported income and on which he based his deficiency for 2002.  While respondent asks that we find that, during 2002, petitioner received $33,969 in "wages" from Mr. Shattenberg, we shall treat that claim as being limited to $33,653, given respondent's concessions with respect to acct. Nos. 6994 and 4815.  On brief, petitioner concedes:  "In

---

[2] Respondent explains that, because petitioner failed to file returns for the years in issue, respondent reconstructed his income in part through an analysis of bank accounts over which petitioner exercised signature authority.  Taxpayers are required to maintain records adequate to determine their Federal income tax liability.  See sec. 1.6001-1(a), Income Tax Regs.  When a taxpayer fails to maintain adequate records, the Commissioner is entitled to reconstruct his income by any reasonable method. E.g., Erickson v. Commissioner, 937 F.2d 1548, 1553 (10th Cir. 1991), affg. T.C. Memo. 1989-552.  We have approved the Commissioner's use of the bank deposits and cash expenditures method of recomputing income.  E.g., Parks v. Commissioner, 94 T.C. 654, 658 (1990).  Indeed:  "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income."  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

2002 and 2003 the Petitioner did receive money from William Shattenberg as earnings from a job where he worked for his boss." He claims, however, that he did not receive "wages".  He elaborates:  "Wages are paid to an <u>employee</u>.  Employee defined by the IRC is <u>an officer, employee or elected official of the United States, a State or any political subdivision thereof, or the District of Columbia</u>."  He argues that, since he is not an employee as so defined, he is not "required by the IRS to report his accumulated property to the IRS."  Petitioner's arguments with respect to the meaning of the terms "wages" and "employee" are meritless, tax-protester arguments.  See, e.g., <u>Custer v. Commissioner</u>, T.C. Memo. 2008-266.  We accord them no weight.

As we have stated, petitioner bears the burden of proof.[3]

---

[3] This case involves unreported income, and barring stipulation to the contrary the venue for appeal is the Court of Appeals for the Ninth Circuit.  See sec. 7482(b)(1)(A), (2).  We are therefore bound by a line of cases of the Court of Appeals for the Ninth Circuit beginning with <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), to which we defer in accordance with the doctrine of <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).  E.g., <u>Rodriguez v. Commissioner</u>, T.C. Memo. 2009-92.  The general rule established by that line of cases is that, for the Commissioner to prevail in a case involving unreported income, there must be some evidentiary foundation linking the taxpayer with the alleged income-producing activity. See <u>Weimerskirch v. Commissioner</u>, <u>supra</u> at 362.  Although <u>Weimerskirch</u> dealt specifically with illegal unreported income, it is now well established that the Court of Appeals for the Ninth Circuit applies the <u>Weimerskirch</u> rule in all cases of unreported income where the taxpayer challenges the Commissioner's determination on the merits.  E.g., <u>Edwards v. Commissioner</u>, 680 F.2d 1268, 1270 (9th Cir. 1982) (Stating, in a
(continued...)

He has conceded that he worked for Mr. Shattenberg in 2002 and was compensated for that work. Section 61(a)(1) provides that gross income includes compensation for services. Petitioner has failed to show that he received any less than $33,653 from Mr. Shattenberg as compensation for services during 2002, and we sustain respondent's adjustment in that amount.[4]

---

[3](...continued)
case involving unreported income from an income-generating auto repair business owned by the taxpayer: "We note, however, that the Commissioner's assertion of deficiencies are presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received unreported income. Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979)."; Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989) ("[T]he Ninth Circuit requires that respondent come forward with substantive evidence establishing a 'minimal evidentiary foundation' in all cases involving the receipt of unreported income to preserve the statutory notice's presumption of correctness."). Petitioner filed no returns for either 2002 or 2003, and he concedes that in 2002 and 2003 he did receive money from Mr. Shattenberg as earnings from a job. Thus, independent of the conclusions we draw from respondent's analysis of bank deposits and cash expenditures, discussed supra, respondent has met his burden of showing that petitioner received unreported income. Petitioner's burden is to show that the unreported income he received from Mr. Shattenberg was less than $33,653 for 2002 and, as discussed infra, $6,426 for 2003.

[4] Because respondent claims on brief that during 2002 and 2003 petitioner received wages from Mr. Shattenberg, we assume that he concedes that petitioner is not subject to self-employment tax on the amounts he received from Mr. Shattenberg during those years. If he does not, the parties can address any dispute in the context of the Rule 155 computation.

B.  2003

In support of the notice, respondent shows the following positive adjustments to petitioner's income for 2003:

| | |
|---|---|
| Wages, Salaries and Tips, etc. | $6,426 |
| Other Income | 1,107 |
| Unemployment Compensation | 9,253 |
| Gross Sales | 72,752 |

The explanation accompanying "Wages, Salaries and Tips, etc." states:  "From records and information available, it has been determined that you received taxable wages in the amounts [sic] shown from William G. Shattenberg, Form W-2."  Petitioner has failed to show that he received any less than $6,426 from Mr. Shattenberg as wages during 2003, and we sustain respondent's adjustment in that amount.

The explanation accompanying the adjustment of $1,107 for "Other Income" describes that amount and adjustments of $919 and $845 similarly labeled for 2004 and 2005, respectively, as "taxable income from the Alaska Permanent Fund".  Petitioner testified that he was entitled to Permanent Fund Dividends from the State of Alaska but did not receive them because they were garnished to pay child support or to pay tax debts.  Payments received under Alaska's Permanent Fund Dividend Program are subject to Federal income tax.  Jones v. Commissioner, T.C. Memo. 1989-616, revd. on another issue 927 F.2d 849 (5th Cir. 1991); accord Greisen ex rel. Greisen v. United States, 831 F.2d 916,

920 (9th Cir. 1987). Income payable to a person that is diverted before its receipt to pay a personal obligation of that person is still income to that person. See Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929); Vorwald v. Commissioner, T.C. Memo. 1997-15. Petitioner has agreed that he was entitled to Alaska Permanent Fund Dividends and has failed to show that his dividends were less than $1,107, $919, and $845 in 2003, 2004, and 2005, respectively. Thus, petitioner has gross income from that source in those amounts for those years.[5]

The explanation accompanying the adjustment of $9,253 for "Unemployment Income" describes that amount and an adjustment of $5,888 similarly labeled for 2004 as "taxable unemployment income * * * from the State of Alaska". We have found that deposits of $1,372 and $3,533 were made into acct. No. 7482 during 2003 and 2004, respectively, accompanied by the annotation "State of Ak Dol Credits". We infer that the term "Dol" is shorthand for "Department of Labor and Workforce Development", and we infer further that the deposits in question represent unemployment compensation petitioner received. Gross income includes unemployment compensation. See sec. 85(a). Petitioner states on brief that he "cannot confirm" respondent's proposed findings of fact that he received $9,253 and $5,888 during 2003 and 2004,

_____

[5] See supra note 3 regarding respondent's obligation under the Weimerskirch line of cases.

respectively, as unemployment compensation from the Alaska Department of Labor and Workforce Development. Respondent supports his proposed findings of fact by directing us to exhibits comprising petitioner's bank statements for acct. No. 7482 for 2003 and 2004. While petitioner bears the burden of proof, we are willing to assume that the Alaska Department of Labor and Workforce Development was consistent in crediting all 2003 and 2004 unemployment compensation payments to acct. No. 7482. Since our examination of those statements reveals total deposits annotated "State of AK Dol Credits" of $1,372 and $3,533 for 2003 and 2004, respectively, we find that petitioner received unemployment compensation in those amounts, and no more, for those years.

The explanation accompanying the adjustment of $72,752 for "Gross Sales" is as stated supra in section II.A. of this report. Ex. 45-R shows that the sum $72,752 encompasses deposits during 2003 into four Wells Fargo Bank, N.A., accounts, acct. Nos. 7482, 4553, 6994, and 4815. Respondent concedes that only the deposits into the first two accounts, totaling $56,845, include petitioner's unexplained gross income. Moreover, given respondent's 2003 adjustments for wages, Alaska Permanent Fund Dividends, and unemployment income totaling $8,905, respondent concedes that the sum of the deposits to those first two accounts constituting unexplained gross income is no greater than

$47,940.[6]  Petitioner offers no explanation for the $47,940 of
unexplained 2003 deposits to acct. Nos. 7482 and 4553; he has
failed to show error in respondent's positive adjustment in his
income in that amount, and we sustain the adjustment in that
amount.

C.  2004

In support of the notice, respondent shows the following
positive adjustments to petitioner's income for 2004:

| | |
|---|---|
| Other Income | $919 |
| Unemployment Income | 5,888 |
| Gross Income--Electric/Power Sales | 62,237 |
| Gross Sales | 118,735 |

Our discussion supra in section II.B. of this report
disposes of the first two items.

The explanation accompanying the adjustment of $62,237 for
"Gross Income--Electric/Power Sales" describes that amount and an
adjustment of $57,245 similarly labeled for 2005 as follows:

From records and information available it has been
determined that you received taxable non-employee
compensation in the amounts shown above from the
sources listed below:

| Payer(s): | 2004 | 2005 |
|---|---|---|
| Port Alexander, Alaska, United States Coast Guard | $12,670 | $13,115 |
| Alascom | $36,775 | $44,130 |
| First Bank in Ketchikan, Alaska | $12,792 | -- |

---

[6] Respondent has satisfied his burden under Weimerskirch v.
Commissioner, 596 F.2d 358 (9th Cir. 1979).  See supra note 3.

We have found payments to Lawson & Associates from the U.S. Coast Guard and AT&T Alascom in the amounts described. Those findings result in part from respondent's proposed findings of fact (with which our findings are consistent). Respondent has proposed no finding with respect to the $12,792 payment labeled "First Bank in Ketchikan, Alaska". We interpret respondent's failure to propose a finding of fact with respect to that payment as respondent's concession that the payment was not an item of gross income to petitioner. We find accordingly.

Petitioner makes no claim that the payments from the U.S. Coast Guard and AT&T Alascom are not items taxable to the recipient; he argues only that Tommy Wells, not he, was the recipient: "The store and electrical plant were acquired by the petitioner for Lawson and Associates owned by Tommy Wells." While both petitioner and Mr. Wells testified to that effect, we found neither credible on the ownership issue.

Mr. Wells could not say when he bought the Port Alexander facility, how much he paid for it, or where he got the money to pay for it. Nor was he sure from whom he (allegedly) purchased the facility. Petitioner introduced into evidence Mr. Wells's amended Federal income tax returns for 2004 and 2005, which report that Mr. Wells was the proprietor of Lawson & Associates. Those returns, however, show a loss from Lawson & Associates for each year (entitling Mr. Wells to claim refunds of previously

paid taxes). Moreover, they were filed September 19, 2007, 6 days after the date of the notice, and Mr. Wells was vague and unconvincing as to why he had not reported his involvement with Lawson & Associates on his originally filed 2004 and 2005 Federal income tax returns. Petitioner also introduced into evidence a copy of an expired business license for Lawson & Associates that shows an original issue date of March 5, 2004, and an expiration date of December 31, 2006. While it also shows Mr. Wells as owner, it does not specify when he became owner; indeed, he could have become owner after 2005, the last year here in question, and still have been covered by the license, which was valid until the end of 2006.

In contrast to Mr. Wells's testimony, there is ample evidence in the record to support our findings that, during 2004 and 2005, petitioner, as sole proprietor, under the name "Lawson & Associates" owned and operated a general store and electrical generating business in and around Port Alexander, Alaska, and owned real property leased to the U.S. Coast Guard. Among that evidence is the following: a bill of sale naming petitioner as the buyer of real and other property Lawson & Associates used; a fax cover sheet to a real estate specialist with the U.S. Coast Guard in which petitioner represents that he is the owner of the property described in the bill of sale; a business account application, dated September 10, 2003, that petitioner submitted

to Wells Fargo Bank, N.A., to open an account under the business name "Lawson and Associates" (as "Sole Proprietor"), which petitioner signed on a line that required that he enter his "Position/Title", which he did, in his own hand, as "owner"; and records of Wells Fargo Bank, N.A., for the business bank account of Lawson & Associates for a portion of 2003, all of 2004, and a portion of 2005 that show the account name "Lee M Lawson DBA Lawson and Associates".  Finally, there is the transcript of petitioner's deposition in Lawson v. Pope in which petitioner unequivocally testifies that in August 2003 he started Lawson & Associates, on February 27, 2003, he bought from Mr. Jodway the real estate leased to the U.S. Coast Guard, and on May 13, 2005, he sold Lawson & Associates and associated property to Mr. Wells.

Petitioner was the recipient of $12,670 and $13,115 paid by the U.S. Coast Guard to Lawson & Associates during 2004 and 2005, respectively.  Likewise, he was the recipient of $36,775 and $44,130 paid by AT&T Alascom to Lawson & Associates during 2004 and 2005, respectively.  Those items are taxable to petitioner.[7]

---

[7] We are aware that in the Lawson v. Pope deposition, petitioner testified that he sold Lawson & Associates and associated property to Mr. Wells on May 13, 2005.  If that were true, then he might not be taxable on all the 2005 receipts from the U.S. Coast Guard and AT&T Alascom.  That testimony is contrary to his position in this case, however (i.e., that he never owned Lawson & Associates), and Mr. Wells could not say when (allegedly) he purchased Lawson & Associates.  We give that portion of the deposition little credit.  Moreover, even if we were to attempt some allocation of the 2005 receipts, it would

(continued...)

The explanation accompanying the adjustment of $118,735 for "Gross Sales" is as stated supra in section II.A. of this report. Respondent again concedes that only deposits into acct. Nos. 7482 and 4553, totaling $113,993, remain unexplained and that petitioner should be given credit against those deposits for respondent's adjustments for 2004 for Alaska Permanent Fund Dividends, unemployment income, and the payments from the U.S. Coast Guard, AT&T Alascom, and, we assume, First Bank in Ketchikan, Alaska, totaling $66,689, leaving unexplained deposits no greater than $47,304. For the same reasons offered above for the similar items, we shall sustain respondent's adjustment in that amount.

D. 2005

In support of the notice, respondent shows the following positive adjustments to petitioner's income for 2005:

| | |
|---|---|
| Other Income | $845 |
| Gross Income--Electric/Power Sales | 57,245 |
| Gross Sales | 111,994 |

Our discussion supra in section II.B. of this report disposes of the first item, and our discussion supra in section II.C. disposes of the second item.

---

[7](...continued)
not reduce petitioner's taxable income for the year, because any reduction in his income attributable to those receipts would be matched by an increase in his income attributable to unexplained bank deposits.

The explanation accompanying the adjustment of $111,994 for "Gross Sales" is as stated supra in section II.A. of this report. Respondent makes concessions similar to those for 2003 and 2004, so that the amount of bank deposits remaining unexplained is $41,346. For the same reasons offered above for the similar items, we shall sustain respondent's adjustment in that amount.

III. Additions to Tax

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing) unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition is equal to 5 percent of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25 percent for returns more than 4 months delinquent. Id.

In pertinent part, section 7491(c) provides: "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any * * * addition to tax". The Commissioner's burden of production under section 7491(c) is to produce evidence that imposing the relevant addition to tax is appropriate. Swain v. Commissioner, 118 T.C. 358, 363 (2002).

Respondent's evidence shows that petitioner did not file Federal income tax returns for any of the years in issue, and we have found accordingly. Respondent's evidence also shows that, for each of those years, petitioner had income sufficient to require him to file a return, i.e., income above the standard deduction and the exemption amount, and we so find.[8] Respondent has produced evidence that imposing the section 6651(a)(1) additions to tax is appropriate. See, e.g., Rodriquez v. Commissioner, T.C. Memo. 2009-92. Petitioner has failed to prove that his failures to file are due to reasonable cause and not due to willful neglect.

Petitioner is liable for the section 6651(a)(1) additions to tax that respondent determined, adjusted to take into account respondent's concessions and other relevant matters discussed in this report.

Decision will be entered

under Rule 155.

---

[8] Sec. 6012(a) requires every individual having gross income exceeding a certain minimum amount to file an income tax return. Petitioner's gross income exceeded the standard deductions of $4,700, $4,750, $4,850, and $5,000 and the exemption amounts of $3,000, $3,050, $3,100, and $3,200 for 2002, 2003, 2004, and 2005, respectively. See sec. 151(d); Rev. Proc. 2001-59, sec. 3.07(1), 3.11(1), 2001-2 C.B. 623, 626; Rev. Proc. 2002-70, sec. 3.09(1), 3.15(1), 2002-2 C.B. 845, 848, 849; Rev. Proc. 2003-85, sec. 3.10(1), 3.16(1), 2003-2 C.B. 1184, 1188; Rev. Proc. 2004-71, sec. 3.10(1), 3.17(1), 2004-2 C.B. 970, 973, 974.