T.C. Summary Opinion 2010-51

UNITED STATES TAX COURT

ANDREA FABIANA ORELLANA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8950-08S.                    Filed April 20, 2010.

Andrea Fabiana Orellana, pro se.

<u>Loren B. Mark</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at

issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined for 2004 a deficiency in petitioner's Federal income tax of $5,326 and an accuracy-related penalty under section 6662 of $1,065.20. Respondent determined for 2005 a deficiency in petitioner's Federal income tax of $7,101.75 and an accuracy-related penalty under section 6662 of $1,420.35.

Petitioner concedes that although her Form 1040A, U.S. Individual Income Tax Return, for 2004 and her Form 1040, U.S. Individual Income Tax Return, for 2005 reflected her filing status as "Single", petitioner's proper filing status for both years is "Married filing separately". The issues remaining for decision[1] are whether petitioner: (a) Had unreported income from eBay[2] sales in 2004 and 2005; (b) is entitled to deduct purchases and claim expenses in connection with her eBay sales activity in excess of amounts respondent allowed; and (c) is liable for accuracy-related penalties for 2004 and 2005 under section 6662(a).

---

[1]Adjustments to petitioner's itemized deductions, student loan interest deductions, self-employment tax deductions, and self-employment taxes are computational and will be resolved consistent with the Court's decision. See secs. 67(a), 221(b), 164(f), 1401.

[2]Petitioner described eBay as an online auction site where buyers and sellers can come together.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference. Petitioner resided in California when the petition was filed.

Petitioner was married to Roberto R. Nadres in March of 2004 and remained married to him throughout 2004 and 2005. Petitioner has been employed by the Internal Revenue Service (IRS) since 2001. During the years at issue and at the time of trial petitioner was employed as a revenue officer.

Because of an allegation that petitioner was selling items on eBay without reporting income from the sales, petitioner became the subject of a criminal investigation during 2006. As the criminal investigators were unable to establish with sufficient proof for criminal prosecution petitioner's cost of goods for the items sold on eBay, the criminal case was closed. Petitioner's case was then referred for civil consideration.

## I.  Examination of the Returns

Respondent performed an employee examination of petitioner's Federal income tax returns for 2004 and 2005 in the person of Tax Compliance Officer Pamela Brooks (TCO Brooks). For the years under examination, petitioner earned wages from her position as a revenue officer with the IRS, and those wages were reported on her returns.

Petitioner has used eBay since 2000.  Between 2000 and 2005 petitioner was involved in over 7,000 eBay transactions.  During all or part of the tax years at issue petitioner sold items under several eBay user IDs, including, "ambassgwf", "andreafo", "askme12go", and "BlackTheRipper"[3].  Petitioner reported no income or expenses from her eBay transactions on her Federal income tax returns for the years at issue.

In an effort to verify petitioner's income for both years TCO Brooks performed a bank deposits analysis (BDA) using bank records she had obtained through summonses[4] issued to Washington Mutual Bank, brokerage account records with ShareBuilder Securities Corporation, and some PayPal[5] records.  The BDA indicated that petitioner had unreported gross receipts for both years.  Using the bank deposits method, TCO Brooks determined that petitioner had unreported income of $15,320.67 in 2004 and $21,062 in 2005.  Petitioner requested that her case be forwarded to the Appeals Office.

---

[3]According to petitioner this screen name was used after 2004.

[4]See sec. 7602.  The Secretary is authorized to summon persons to produce books, papers, or other data that may be relevant to the determination of the accuracy of a tax return of a taxpayer.

[5]PayPal is an Internet business wholly owned by eBay, Inc. Petitioner described PayPal as an online "escrow company."  A seller can be assured that if he sends an article to a buyer, the buyer has deposited money in the account that will be sent to the seller upon receipt of the article by the buyer.

Both years at issue were forwarded to the Appeals Office. After reviewing the files in petitioner's case, the Appeals Office prepared its own version of a BDA and issued the statutory notice of deficiency determining unreported income of $14,163.01 for 2004 and $18,595.25 for 2005.

## II. Preparation for Trial

Petitioner's case was subsequently assigned to respondent's counsel for trial preparation. Respondent's counsel enlisted the assistance of Crystal Young, a special enforcement program revenue agent (RA). The RA reviewed the administrative file and the previous BDA as well as the returns for both years. There were some eBay and PayPal records in the file but they were incomplete, consisting of records of about 50 sales, showing primarily sales that had been refunded or reversed.

### A. Informal Discovery

Petitioner hired an attorney who represented her during a settlement conference. Her counsel advised her to prepare a list of expenses and to provide what documents she might have to verify her list. Petitioner provided her attorney with some ledgers, worksheets, and a "certain amount of documents to back those up." At the meeting, attended by respondent's counsel and the RA, petitioner's attorney presented petitioner's summary of expenses and other documents. Respondent had not yet obtained any records from eBay/PayPal. Petitioner's counsel provided an

explanation of some items that petitioner thought were nontaxable deposits but did not provide any documents to support those contentions.

Because petitioner did not maintain any records of her purchases and sales of items on eBay, respondent subpoenaed records pertaining to petitioner from eBay/PayPal. The company complied with respondent's subpoena by producing voluminous "duplicates of reports and records maintained by eBay/PayPal" pertaining to petitioner under the names "Andrea Fabiana Orellana", "Andrea Orellana Nadres" and "Andrea Nadres". The records were for 2004 and 2005 under the eBay user IDs "ambassgwf", "andreafo", and "askme12go".[6]

The RA's examination of the PayPal records resulted in a determination that petitioner had approximately 1,200 eBay sales in 2004 and 600 in 2005. The RA used the PayPal records supplied by eBay/PayPal for her analysis because the company keeps PayPal records for a longer period of time than eBay records.

B. Trial Calendar

After the case was called at the trial calendar, respondent's counsel and the RA met with petitioner for the first time. A paralegal for respondent was also present. As a result of discussing whether certain items were taxable or nontaxable,

---

[6]No records were provided for petitioner under the user name "BlackTheRipper".

the RA determined that there were additional nontaxable items that should be subtracted from the unexplained deposits of the BDA. During the meeting petitioner provided some additional documents, including some copies of canceled checks. Petitioner also presented a "summary" of items that she said were expenses for 2005. The RA attempted to evaluate whether the checks and other documents were evidence of business expenses, but without petitioner's assistance (at some point petitioner left the meeting) the RA was unable to make a determination that they were valid business expenses.

After a review using the records and other information at her disposal, including the eBay/PayPal records produced in response to the subpoena, the RA prepared yet another BDA, which changed the income computation for both years. She lowered the unexplained deposits of the BDA in both years by subtracting some deposits. The BDA's unexplained deposits were reduced where the records of the PayPal account showed funds that were transferred from PayPal to petitioner's bank accounts. The RA's analysis of the eBay/PayPal records resulted in a decrease of the BDA income but enabled her to determine specific items of unreported gross receipts as shown by the individual items of sales proceeds deposited into petitioner's PayPal account. For 2004 the RA determined that there were unidentified bank deposits of $8,402.48 and unreported adjusted gross receipts from eBay/PayPal

of $22,260.65 for a total of $30,663.13 of unreported income.[7]
For 2005 the RA determined that there were unidentified bank
deposits of $1,711.01 and adjusted gross receipts from
eBay/PayPal of $9,468.28 for a total of $11,179.29 of unreported
income.

## Discussion

Section 6214(a) provides that this Court shall have
jurisdiction to redetermine the correct amount of the deficiency
even if the amount so redetermined is greater than the amount
determined by the Commissioner in the notice of deficiency if the
Commissioner asserts a claim at or before the hearing or
rehearing.  Consistent with the general mandate of section
6214(a), this Court generally will only exercise its jurisdiction
over an increased deficiency where the matter is properly
pleaded.  See Estate of Petschek v. Commissioner, 81 T.C. 260,
271-272 (1983), affd. 738 F.2d 67 (2d Cir. 1984); Markwardt v.
Commissioner, 64 T.C. 989, 997 (1975).  Rule 41(b)(1), however,
provides that when an issue not raised in the pleadings is tried
with the express or implied consent of the parties, that issue is
treated in all respects as if it had been raised in the
pleadings.  Thus, where the Commissioner raises an issue that
could result in an increased deficiency without formally amending

---

[7]There was no reduction in gross receipts to account for
petitioner's basis, if any, because there was no evidence with
which to tie petitioner's purchases to her sales.

his pleading and that issue is tried with the taxpayer's express or implied consent, the requirement in section 6214(a) that the Commissioner make a claim for the increased deficiency is satisfied.  See Woods v. Commissioner, 91 T.C. 88, 93 (1988).

At trial respondent asserted a claim for an amount greater than that stated in the notice of deficiency for 2004.  The proposed increase is due to respondent's use of subpoenaed eBay/PayPal records in a hybrid method of computing unreported income.  Use of the eBay/PayPal records resulted in a decrease in the deficiency respondent sought for 2005.  Petitioner argued that she had attempted to obtain records of her sales from eBay but was unaware that she could have subpoenaed them. Petitioner's objection to respondent's use of the PayPal records was that the records did not include all of her eBay transactions.  Under the foregoing circumstances, we do not believe petitioner was either surprised or disadvantaged by respondent's claim that petitioner is liable for an increased deficiency for 2004.  Thus, the Court concludes that respondent has asserted a claim for an increased deficiency as required by section 6214(a).

Taxpayers generally bear the burden of proving that the Commissioner's determinations are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, the Commissioner bears the burden of proof in respect of any new

matter or increases in deficiency.  Rule 142(a); <u>Powerstein v. Commissioner</u>, 99 T.C. 466, 473 n.4 (1992).  The resolution of the remaining issues does not depend on which party has the burden of proof.  The Court resolves those issues on the preponderance of the evidence in the record; therefore section 7491 does not apply.

## I.  <u>Reconstruction of Gross Income</u>

Section 6001 requires a taxpayer to maintain sufficient records to allow for the determination of the taxpayer's correct tax liability.  <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 686 (1989).  If a taxpayer fails to maintain or does not produce adequate books and records, the Commissioner is authorized to reconstruct the taxpayer's income.[8]  Sec. 446(b); <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 686-687.  Indirect methods may be used for this purpose.  <u>Holland v. United States</u>, 348 U.S. 121 (1954).  The Commissioner's reconstruction need only be reasonable in the light of all the surrounding facts and circumstances.  <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 687; <u>Giddio v. Commissioner</u>, 54 T.C. 1530, 1533 (1970).

### A.  <u>Bank Deposits</u>

Petitioner argues that she did not consider herself to be in "business" and therefore did not think she was required to

---

[8]There is no dispute that petitioner received gross receipts from eBay sales.  See <u>Lawson v. Commissioner</u>, T.C. Memo. 2009-147 n.3.

maintain records to account for the gross receipts from her online sales. The Court therefore finds that it was reasonable for respondent to use an indirect method, the bank deposits method, to aid in reconstructing petitioner's income for 2004 and 2005.

Bank deposits constitute prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method of determining income assumes that all the money deposited into a taxpayer's bank accounts during a specific period constitutes gross income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). The Commissioner, however, must take into account any nontaxable source or deductible expense of which it has knowledge. Id. The method employed is not invalidated even if the calculations of the Commissioner are not completely correct. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

As part of her BDA for each year at issue, the RA created summaries of nontaxable deposits as identified by petitioner and allowed by respondent and nontaxable deposits as identified by petitioner and not allowed by respondent. Among the items not allowed by respondent were certain checks written to petitioner by her father, Victorino O. Orellana, and deposited into petitioner's account. Petitioner produced a copy of a canceled check from her father in the amount of $4,200, which petitioner

claimed was a wedding present, and copies of a series of six small checks totaling $202.15 that petitioner represented to be payments to her for telephone service she shared with her father and brother. Petitioner's father was called as a witness and credibly testified[9] that the $4,200 check written to petitioner in March 2004 was a wedding gift and that the smaller checks represent his share of a bill for telephone service he shared with his son and his daughter, petitioner. The Court therefore finds that the check for $4,200 and the six checks totaling $202.15 deposited in 2004 represent nontaxable deposits that reduce the unexplained bank deposits of petitioner for that year.

Petitioner introduced at trial a document (chart) that purports to be a summary of "Bank Statement Deposits/Expenses" for 2004 and 2005. The summary does not identify the bank account to which the listed deposits were made, includes no receipts or other documentation for the listed expenses, "purchases", and sales, and provides no explanation as to how the "nontaxable" amounts were computed. Petitioner explained that the documents she used to prepare the chart were lost after they were presented to respondent at the settlement conference.

The Court finds that petitioner, other than with respect to the previously discussed checks written by her father, has not

---

[9]The Court notes that petitioner's father, having observed petitioner's internet activity, described eBay as "a business that you do of purchases and sales on the computer."

shown sufficient evidence from which the Court can determine that respondent's bank deposits analyses are in error.

### B. Specific Items of Income

In addition to unexplained deposits to her bank accounts, respondent has determined from eBay/PayPal records that petitioner had substantial gross receipts from sales of items on the Internet. Respondent was able to identify and eliminate from petitioner's bank deposits transfers of funds from her Pay/Pal account to her bank accounts.

## II. Petitioner's Arguments

With respect to respondent's determinations petitioner makes the following observations: (1) The determinations are inaccurate because the records respondent obtained are incomplete in that the PayPal payment records do not reflect all of her eBay sales; (2) how can the "investigator", TCO Brooks, and the RA come up with different amounts "looking at the same exact document, how can that be?"; (3) because she did not believe she was conducting a business she kept neither receipts nor records of her eBay sales activity; and (4) respondent has not properly allowed the deductions to which she is entitled.

### A. PayPal Records Incomplete

With respect to petitioner's first observation, it is not apparent to the Court how records of additional eBay sales, paid for by methods other than through PayPal, would help petitioner's

case in view of respondent's allegations of unreported eBay income. Petitioner did state that additional eBay records "might reflect the many, many auctions that were never sold." Petitioner, however, later testified that sometimes when she could not sell items or could not sell them for the price she wanted, she would have "real garage sales" that coworkers and managers would attend.

### B. Differing Bank Deposits Analyses

The second observation of petitioner can be easily explained. The "investigator", TCO Brooks, and the RA, despite petitioner's impression, were not looking at the "same exact document." The criminal investigators would have prepared a case in which the bank deposits method of proof was supported by evidence sufficient to establish a criminal violation beyond a reasonable doubt. Internal Revenue Manual pt. 38.3.1.3, Prosecution Standards (Aug. 11, 2004). Under this standard, any ambiguity about a deposit, transfer, or other item would be resolved in petitioner's favor. No such standard is required for civil examinations or for litigation in this Court, where taxpayers ordinarily bear the burden of proof by a preponderance of the evidence. See Rule 142(a); Welch v. Helvering, supra at 115.

At each step of the administrative process in petitioner's case, new information became available. The TCO did not have

complete eBay/PayPal information when she prepared her BDA. The Appeals officer received additional information that she used in preparing her BDA. The RA, who assisted respondent's counsel in trial preparation, obtained under subpoena extensive records from eBay/PayPal for use in her BDA and specific items computation. The application of new information would naturally result in a different bank deposits calculation.

C. Petitioner Not in "Business"

As to her third observation, petitioner's subjective belief that she was not engaged in a "business" does not relieve her of the responsibility to report gains from property sales. See sec. 61(a)(3); sec. 1.61-6, Income Tax Regs. In order to determine whether she had gains from property sales, petitioner would have had to keep track of her cost or other basis in the property sold and the amount realized upon sale. Secs. 1001, 1012, 1014, 1015.

Petitioner argues that she was just taking things in her home and her garage and selling them online; she characterized it as an "on-line garage sale". Petitioner explained that she liked to shop for and buy designer clothes, some of which "were sitting in her closet". She testified that while the clothes were "used most of them; some are new," so she "would put them on eBay". She might sell a $350 pair of shoes for $50 but that was better than having them sitting in her closet "wasting space", she testified.

Petitioner testified that she did not understand why respondent so persistently asked for proof of her costs and expenses. She testified that she purchased personal items and never kept a receipt. "That would be ridiculous, unheard of. Unless there was some really bizarre reason why I kept a receipt, there were no receipts", according to petitioner. To address respondent's claim that she was operating a business, petitioner said she put together two charts, based on her bank statements and PayPal records, showing her "business" expenses. "I didn't have receipts. I sold wedding gifts." "I had gift cards. I said well, I didn't pay anything of [sic] these gift cards from my wedding, so I guess I just take all of that as a loss. They said no. The basis is the gift card."

On the other hand, petitioner admitted that she "occasionally" purchased items for sale in the ordinary course of her eBay sales activity that would still "have tags on them". When she was reminded that most of the items she sold were "advertised" as new, petitioner responded: "I always advertise as new only because you can get a better price for that." And she added, "So basically when you're asking these questions about why things are new, I document them as new if it appears new. Is that wrong?" Petitioner explained that she sold clothing and shoes of various sizes because she contracted plantar fasciitis and was unable to keep up her exercise routine. Lack of exercise

caused her dress size to increase, according to petitioner, and the use of orthotics caused her shoe size to increase.

III.  Petitioner's Bases in Items and Expenses

Petitioner's documentary evidence consisted of a disorganized hodgepodge of eBay records for one screen name; some PayPal records of purchases for 2004 and 2005, some of which cannot be identified as connected with petitioner; computer printouts of what purport to be PayPal payments to various payees; PayPal records of refunds and reversals, most of which cannot be identified as connected with petitioner; various checks, summaries, and statements without explanatory information; and records of apparent PayPal sales, most of which cannot be identified as connected with petitioner.

Petitioner maintained a PayPal debit card account throughout the entire year 2004 and until January 5, 2005.  Included in the documents produced by eBay/PayPal under subpoena was a PayPal debit card log for the period December 1, 2003, through January 5, 2005, and a PayPal debit card log for January 5, 2005.  The RA analyzed the PayPal expenditure records for 2004 and 2005, including the eBay/PayPal payment records and the PayPal debit card logs, and separated the items into categories.  For each year, the first page of the analysis is a summary of expenditures.  The second page attempts to identify and

categorize the expenditures as "Business", "USPS", "Potentially Business/Personal" and "Likely Personal".

Items such as eBay fees or bubble wrap were placed in the Business category and allowed as business expenses. The USPS items are post office expenditures that could not be matched with the sale of any specific item. The USPS expenditure could be a business or personal expense. The items in the Potentially Business/Personal category contain items similar to those that petitioner sold, like clothes and cosmetics. There were, however, too many individual sales and purchases to attempt to tie them together without petitioner's help. The RA did attempt to tie items together where there were "a lot of the same brand or similar items that I could see", but she was unsuccessful. The Likely Personal category contains items that appear wholly personal, like expenditures for Blockbuster videos, restaurants, and newspapers.

The RA testified that whatever expense items petitioner supplied to her were taken into consideration in the revised tax numbers. Petitioner asked the RA why she didn't take into consideration the "expense" of a digital camera. The RA stated that she did not see a receipt for one. Petitioner asked if she saw evidence of the purchase in the eBay records. The RA denied identifying such an item in the eBay records. Petitioner asked the RA why she did not allow the postage and shipping amounts

that petitioner listed on summary of expenses she presented to RA and respondent's counsel. The RA testified that she did not see documents totaling those amounts.

Where a taxpayer has established that he has incurred an expense, failure to prove the exact amount of the otherwise deductible item may not always be fatal. Generally, unless precluded by section 274, we may estimate the amount of such an expense and allow the deduction to that extent. See Finley v. Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), affg. 27 T.C. 413 (1956); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In order for the Court to estimate the amount of an expense, however, we must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, an allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Petitioner has not produced any coherent evidence from which the Court can determine the bases for the hundreds of items she sold in 2004 and 2005 or the expenses she may have paid in the pursuit of her eBay sales activity beyond those respondent already allowed.

IV. Accuracy-Related Penalties

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v.

Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v.
Commissioner, T.C. Memo. 2003-164.  In order to meet the burden
of production under section 7491(c), the Commissioner need only
make a prima facie case that imposition of the penalty or
addition to tax is appropriate.  Higbee v. Commissioner, supra at
446.

Respondent determined that for both 2004 and 2005 petitioner
underpaid a portion of her income taxes due to negligence or
intentional disregard of rules and regulations.  Section 6662(a)
and (b)(1) imposes a penalty equal to 20 percent of the portion
of the underpayment attributable to negligence or disregard of
rules or regulations.

Negligence is defined as any failure to make a reasonable
attempt to comply with the provisions of the Internal Revenue
Code, and the term "disregard" includes any careless, reckless,
or intentional disregard.  See sec. 6662(c).  Negligence also
includes any failure by the taxpayer to keep adequate books and
records or to substantiate items properly.  Sec. 1.6662-3(b)(1),
Income Tax Regs.

The accuracy-related penalties will apply unless petitioner
demonstrates that there was reasonable cause for the underpayment
and that she acted in good faith with respect to the
underpayment.  See sec. 6664(c).  Section 1.6664-4(b)(1), Income
Tax Regs., specifically provides:  "Circumstances that may

indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer."

Petitioner's attitude toward the preparation of her tax returns appeared to be cavalier. During his examination of petitioner, respondent's counsel asked her if she noticed that line 21 of her income tax returns provides for reporting "other income" and refers the taxpayer to page 29 of the instruction booklet. Petitioner testified that she "had prepared 1040s since she was 16" and that she would "never look at the instructions."

Petitioner is a revenue officer with the IRS. With this background, she has a wider range of knowledge of tax matters than do members of the general public. See Kendrix v. Commissioner, T.C. Memo. 2006-9. Petitioner is, or certainly should be, familiar with the recordkeeping requirements of section 6001, and she had access to a wide range of tax resources relating to the reporting of income and deductions. The Court might not expect for a taxpayer to keep records for a few small items sold on eBay. In view, however, of the large number of transactions in 2004 and 2005 in which petitioner engaged, she should have realized that her activity might be subject to question. Accordingly, respondent's determination is sustained.

We have considered the other arguments of the parties, and they are either without merit or not necessary in view of our resolution of the issues in this case.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.