T.C. Memo. 2017-134

UNITED STATES TAX COURT

STEVEN EDWARD ELLISON AND STACY SUZANNE ELLISON, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19374-14.                    Filed July 5, 2017.

Steven Edward Ellison and Stacy Suzanne Ellison, pro sese.

<u>Kimberly L. Clark</u> and <u>Catherine J. Caballero</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent issued a notice of deficiency to petitioners

determining deficiencies in income tax and accuracy-related penalties.[1]  After

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the years at issue, and all Rule references are to

(continued...)

**[*2]** concessions,[2] the remaining issues for decision are whether petitioners for tax years 2008, 2009, and 2010 (taxable years at issue):  (1) had unreported Schedule C gross receipts of $1,607, $31,908, and $28,432, respectively; (2) are entitled to deductions claimed on Schedules C for "business use of home" in any amount; (3) are entitled to deductions claimed on Schedules E, Supplemental Income and Loss, for rental real estate losses of $85,173, $91,291, and $74,565, respectively; and (4) are liable for section 6662(a) accuracy-related penalties.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in Washington State when the petition was filed.

---

[1](...continued)
the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2]Before trial the parties agreed that petitioners are entitled to:  (1) a deduction on Schedule A, Itemized Deductions, for mortgage interest of $22,676 for 2008; (2) an additional deduction on Schedule A for taxes of $14,430 for 2009; (3) charitable contribution deductions of $1,737, $1,723, and $1,633 for 2008, 2009, and 2010, respectively; and (4) a capital loss deduction of $3,000 for 2009. The parties also agreed that petitioners are not entitled to their claimed Schedule A miscellaneous deduction of $6,408 for 2009.  Finally, the parties agreed to reduce petitioners' gross receipts related to the Redmond property, reported on Schedules C, Profit or Loss From Business, by $38,285 and $23,875 for 2009 and 2010, respectively.

**[*3]** Respondent audited petitioners' 2008-10 tax returns and, using statements made by petitioners and the bank deposits method, determined that, after concessions, petitioners had unreported Schedule C gross receipts of $1,607, $31,908, and $28,432 for tax years 2008, 2009, and 2010, respectively. Respondent verified that the bank accounts subject to respondent's analysis were used by petitioners in conjunction with their rental real estate activity and held deposits of rental income and taxable interest.

Petitioners attached Forms 8829, Expenses for Business Use of Your Home, to their original 2008 and amended 2009 and 2010 tax returns and claimed home office expense deductions of $2,846, $3,568, and $3,304, respectively. Respondent did not accept petitioners' amended returns for 2009 and 2010. At no point during either the audit or trial have petitioners provided or introduced any documentation substantiating their reported home office expenses nor did they allow the revenue agent to view the purported home office space.

Petitioners listed seven rental properties on Schedules E of their 2008-10 tax returns and made elections on their original 2008-10 tax returns to treat all interests in rental real estate as a single rental real estate activity for those years.[3]

_____

[3]Sec. 1.469-9(g)(3), Income Tax Regs., provides that this election must be filed with the taxpayer's original tax return for the taxable year.

**[\*4]** Petitioners claimed on Schedules E rental real estate loss deductions of $85,173, $99,068, and $78,373 for 2008, 2009, and 2010, respectively. Petitioners prepared activity logs for their rental real estate activities. Of their total reported hours (1,079, 1,063, and 1,080 for 2008, 2009, and 2010, respectively), petitioners reported 57.58, 540.40, and 518.25 hours attributable to their Redmond property, one of the seven properties, for 2008, 2009, and 2010, respectively. Respondent analyzed petitioners' activity logs and determined that they were entitled to "Total Possible Qualifying Work Time" attributable to their claimed rental real estate activity of only 499.85, 392.67, and 467.03 hours for 2008, 2009, and 2010, respectively.[4] We find no credible evidence to increase these hours. Petitioners concede on brief that Stacy Ellison "hired professionals, supervised work, reviewed plans, inspected completed work and supervised." There is no credible evidence, however, to determine either the number of petitioners' work hours attributable to each property or whether petitioners' participation constitutes substantially all of the participation for any property.

---

[4]Respondent's calculation of "Total Possible Qualifying Work Time" includes hours attributable to the Redmond property. Petitioners did not introduce any credible evidence to substantiate their reported hours attributable to the Redmond property in excess of the hours respondent allowed.

**[\*5]** Mrs. Ellison claimed 102.31 hours worked in 2008 on the development of a subdivision (subdivision project) but did not provide any credible testimony or introduce any documentary substantiation to verify those claimed hours. In addition to petitioners' time spent on their rental real estate activity, Mrs. Ellison, by her own admission, worked 854.5, 801, and 813 hours as a part-time instructional assistant at the Sexton Mountain Middle School during 2008, 2009, and 2010, respectively.

The Redmond property was not held for rent in 2008, but it was rented in 2009 and 2010 to various tenants for an average of seven days or less. Petitioners rented the Dawn Street property, one of the seven properties, to Todd Fauvelle, Steven Ellison's brother, in 2008, 2009, and 2010 and reported rental income of $800, $4,550, and $8,200 from that property, respectively. The stated monthly rent for the Dawn Street property during the taxable years at issue was $1,000. Accordingly, Mr. Fauvelle did not pay fair market rent for the Dawn Street property for 2008-10.

On May 15, 2014, respondent sent petitioners a notice of deficiency that (1) disallowed petitioners' claimed deductions for business use of a home for 2008, (2) disallowed petitioners' claimed rental real estate loss deductions from rental properties for 2008-10 because respondent determined that petitioners' rental real

**[\*6]** estate activity was passive within the context of section 469 (but allowed an amount as determined under section 469(i)), (3) determined that petitioners had unreported Schedule C gross receipts for 2008-10, and (4) determined that petitioners were liable for section 6662(a) accuracy-related penalties for 2008-10.[5] Petitioners timely filed a petition for redetermination.

OPINION

## I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Respondent established that petitioners owned the bank accounts included in respondent's bank deposits analysis and that those bank accounts were used by petitioners in conjunction with their rental real estate activity and held deposits of rental income and taxable interest.  Accordingly, the determinations in the notice of deficiency are entitled to the general presumption of correctness.  Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979) (stating that the

---

[5]The Internal Revenue Service may, but is not statutorily required to, accept amended returns.  See Fayeghi v. Commissioner, 211 F.3d 504, 507 (9th Cir. 2000), aff'g T.C. Memo. 1998-297.  Respondent did not accept petitioners' amended returns for 2009 and 2010.

[*7] Commissioner may not rely on the presumption of correctness with regard to a deficiency determination unless that determination is supported by a "minimal evidentiary foundation", such as showing a taxpayer's bank deposits), rev'g 67 T.C. 672 (1977). Petitioners bear the burden of proving by a preponderance of the evidence that respondent's determination of unreported income is arbitrary or erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74 (1986).

Deductions are a matter of legislative grace. Deputy v. du Pont, 308 U.S. 488, 493 (1940). Taxpayers must comply with specific requirements for any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

If the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his Federal income tax liability, the burden of proof may shift from the taxpayer to the Commissioner as to that factual issue. Sec. 7491(a)(1). The shifting of the burden of proof, however, is conditioned upon the taxpayer's first demonstrating that he meets the requirements of section 7491(a)(2), including: (1) substantiating any item as required by the Code; (2) maintaining all records required by the Code; and (3) cooperating with the Commissioner's reasonable requests for witnesses, information, documents,

**[\*8]** meetings, and interviews. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. In this case, the evidence does not establish that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

The Commissioner bears the burden of production with respect to any accuracy-related penalties under section 6662. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the burden of production is met, the taxpayer bears the burden of proof, including the burden of proving reasonable cause for his underpayment of Federal income tax. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

## II.     Unreported Gross Receipts

Petitioners were required, but failed, to maintain adequate records. See sec. 6001. The Commissioner's "use of the bank deposit[s] method for computing unreported income has long been sanctioned" by this Court when a taxpayer fails to keep adequate books and records. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); see sec. 446(b); Parks v. Commissioner, 94 T.C. 654, 658 (1990).

Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. at 77. The bank deposits method assumes that all deposits into a taxpayer's account are taxable unless the taxpayer can show that the deposits are nontaxable, and "the government must take into account any non-

**[\*9]** taxable source \* \* \* of which it has knowledge." <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964); <u>see</u> <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 868 (1991), <u>aff'd</u>, 959 F.2d 16 (2d Cir. 1992). Petitioners have not proved that respondent's analysis was erroneous, nor have they introduced credible evidence substantiating that several of their deposits were loan repayments, nontaxable deposits, overpayment refunds, or merely money shifted between family members--all of which they argued. Accordingly, we sustain respondent's determinations of unreported gross receipts for 2008-10.

III.   Section 280A Deductions

Section 280A(a) generally disallows deductions attributable to a dwelling unit used by the taxpayer as a residence during the taxable year. A dwelling unit is used as a residence if the taxpayer, or a family member, uses it for personal purposes for more than the greater of 14 days during a year or 10% of the number of days the residence is rented at fair market rent that year, but not if the taxpayer rents the residence to a family member who pays fair market rent and uses the unit as a principal residence. Sec. 280A(d)(1), (2)(A), (3)(A); <u>see</u> sec. 267(c)(4) (defining family member).

**[\*10]** Section 280A(c)(1)(A) provides that a taxpayer may deduct expenses allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer.

### A.     Deductions for Losses Attributable to the Dawn Street Property

Petitioners rented the Dawn Street property to Mr. Fauvelle, Mr. Ellison's brother, who did not pay fair market rent for the property.  Therefore Mr. Fauvelle's use of the Dawn Street property is personal and is attributed to petitioners.  See secs. 267(c)(4), 280A(d)(1), (2)(A).  Accordingly, deductions attributable to the Dawn Street property are limited to the extent of rental income and we need not determine whether the losses or deductions are passive.  See secs. 280A(c)(5), 469(j)(10).

### B.     Home Office Expense Deductions

Petitioners bear the burden of proving entitlement to a home office expense deduction but have not produced any credible testimony nor introduced credible documentary evidence to substantiate that they used a portion of their dwelling unit regularly and exclusively for business purposes.  Accordingly, petitioners are not entitled to home office expense deductions for tax years 2008-10.

**[\*11]** IV.     <u>Section 469 Losses From Rental Real Estate Activity</u>

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212.  Generally, an individual is not entitled to a deduction for a passive activity loss for the year in which that loss is sustained.  <u>See</u> sec. 469(a).  A passive activity is a trade or business in which the taxpayer does not materially participate.  <u>Id.</u> subsec. (c)(1).  Except as provided in section 469(c)(7), the term "passive activity" includes any rental activity regardless of whether the taxpayer materially participates.  <u>Id.</u> paras. (2), (4); <u>see</u> sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988) (defining "rental activity" to exclude tangible property where the average period of customer use for that property is seven days or less).

Section 469(c)(7) provides that rental activities of certain taxpayers in real property trades or businesses (sometimes referred to as real estate professionals) are not per se passive activities under section 469(c)(2) but are treated as a trade or business subject to the material participation requirements of section 469(c)(1)(B) if the taxpayer:  (1) performs more than one-half of the personal services during the year in real property trades or businesses in which the taxpayer materially participates and (2) performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially

[*12] participates. Sec. 469(c)(7)(B); see sec. 1.469-9(e)(1), Income Tax Regs. In the case of a joint return, either spouse must separately satisfy both requirements. Sec. 469(c)(7)(B).

A taxpayer can establish material participation by satisfying any one of the seven tests provided in the regulations. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); see id. para. (f)(4), 53 Fed. Reg. 5727 (detailing the methods of proof an individual can use to establish participation in an activity). Each interest in rental real estate is treated as a separate rental real estate activity unless the taxpayer makes an election by filing a statement with the taxpayer's original tax return for the taxable year to treat all interests as a single rental real estate activity. Sec. 1.469-9(e)(1), (g)(1), (3), Income Tax Regs.

Petitioners filed an election with each of their original 2008-10 tax returns to treat all interests in rental real estate as a single rental real estate activity. The Redmond property, which was not held out for rent in 2008, had an average customer use of seven days or less in 2009 and 2010; and therefore it is not a rental activity for purposes of section 469(c)(2). See sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., supra. Petitioners have not introduced credible evidence to substantiate that they meet any of the material participation

[*13] requirements in section 1.469-5T(a), Temporary Income Tax Regs., supra, in regard to the Redmond property. Accordingly, the losses attributable to the Redmond property are passive under section 469(c)(1), and petitioners are not entitled to offset those losses against their other income, except to the extent determined by respondent under section 469(i).

The hours attributable to the subdivision project are not included in determining whether Mrs. Ellison was a real estate professional because petitioners did not provide any credible testimony nor introduce any credible documentary evidence to substantiate that Mrs. Ellison meets any of the material participation requirements in section 1.469-5T(a), Temporary Income Tax Regs., supra, for the subdivision project. Regardless of whether the hours attributable to the Redmond property are included in the determination of whether Mrs. Ellison was a real estate professional, petitioners' logs substantiating their claimed hours are not credible (nor is their testimony regarding the accuracy of the logs) because the logs exaggerate time spent performing rental real estate activities; specifically, the logs include nonqualifying hours such as driving time, time taken to log journal entries, time before petitioners owned a property, and time before

**[\*14]** petitioners attempted to rent a property.[6]  The logs also fail to account for mealtime and personal time.

We see nothing in the record to change respondent's determination that Mrs. Ellison spent 499.85, 392.67, and 467.03 hours performing rental real estate activities in 2008, 2009, and 2010, respectively.  Therefore neither petitioner qualifies as a real estate professional because neither performed more than one-half of the personal services during the taxable years at issue in real property trades or businesses in which he or she materially participated.[7]  Petitioners' rental real estate activity is therefore passive, and they are not entitled to offset losses against their other income except to the extent determined by respondent under section 469(i).

---

[6]Taxpayers bear the expense of commuting (driving time) because it is a personal expense unless an allocation for additional expenses can be made between personal and business expenses.  See Fausner v. Commissioner, 413 U.S. 838, 839 (1973).  Petitioners have not introduced any credible evidence to substantiate their assertion that Mrs. Ellison performed any business activities during the claimed driving time.

[7]Nor do we find that either petitioner performed more than 750 hours during the taxable years at issue in real property trades or businesses in which he or she materially participated.

**[*15]** V.    Section 6662(a) Penalties Determined Against Petitioners

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty on any portion of an underpayment of Federal income tax that is attributable to the taxpayer's "negligence or disregard of rules or regulations" or "substantial understatement of income tax".

An understatement of Federal income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  If the Rule 155 computations confirm substantial understatements for the taxable years at issue, then respondent has met his burden of producing evidence that the penalties are justified.  See sec. 7491(c).

Negligence includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly."  Sec. 1.6662-3(b), Income Tax Regs.  Petitioners were required, but failed, to maintain adequate logs and records to document their gross receipts and substantiate their deductions.  Accordingly, we find that petitioners' underpayments of Federal income tax were also attributable to negligence.

**[\*16]** The taxpayer may rebut evidence that a section 6662(a) accuracy-related penalty is appropriate if he can demonstrate (1) reasonable cause for the underpayment and (2) that he acted in good faith with respect to the amount paid. Sec. 6664(c)(1). A determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners admit that the "penalties make sense" but that they should nonetheless be excused. Petitioners have not satisfied their burden of proving reasonable cause for their underpayments of Federal income tax. See sec. 6664(c)(1). We therefore hold that if the Rule 155 computations confirm substantial understatements, petitioners are liable for the penalties respondent determined for underpayments attributable to both negligence and substantial understatements of income tax under section 6662(a) and (b)(1) and (2).

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

**[\*17]** To reflect the foregoing,

Decision will be entered

under Rule 155.